UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HARRY L. SHORT,

        Plaintiff,

v.                            CIVIL ACTION NO. 2:17cv484

PORTSMOUTH REDEVELOPMENT AND
HOUSING AUTHORITY,
VERBENA M. ASKEW and
THE VERBENA ASKEW LAW FIRM, P.C.,

        Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In this employment dispute, Plaintiff Harry L. Short ("Short") filed suit against his former employer, Portsmouth Redevelopment and Housing Authority ("PRHA" or the "Authority"); its attorney, Verbena Askew ("Askew"); and her law firm. Short contests his termination as PRHA's Executive Director, and claims Askew defamed him in statements she made to reporters after his firing. He has alleged contract and defamation claims, as well as constitutional violations under 41 U.S.C. § 1983, claiming the Defendants deprived him of property and liberty interests related to his employment without providing due process. The Defendants have moved to dismiss the defamation and constitutional claims asserting immunity and sufficiency arguments under Federal Rule of Civil

1

Procedure 12(b)(6).   For the reasons stated in detail below, this Report recommends the court grant in part and deny in part the motion to dismiss.

## I.   FACTS

Short was Executive Director of the PRHA from 2009 until his termination on August 2, 2016.[1] Compl. ¶¶ 18-19 (ECF No. 1-1).   His written Employment Agreement (the "Agreement") provided him with a rolling three-year renewable term of employment.   In other words, unless PRHA terminated the Agreement, it would renew each year for a three-year term.   Id., ¶ 9, and Ex. 1, ¶ 1. The three-year Agreement was renewed every year from 2011 to 2016.   Id., ¶ 10 .

Under the Agreement, Short could be terminated without cause by providing written notice of the termination date and paying Severance Pay, which was defined under the Agreement as the amount of his salary due for the remaining term of the Agreement, but in no event less than two years' salary.   Id., Ex. 1, ¶¶ 11.3, 11.4 (ECF No. 1-1).   The Authority could also terminate for cause, by providing written notice setting forth the reasons for the termination and the effective date.   In the event of a termination for cause, the Authority did not have to pay Severance, only the compensation due to Short through the

---

[1]The facts are derived from the Complaint, and taken as true for purposes of the Motion to Dismiss.   See Garratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

2

termination date.   Id., ¶ 11.4(a) – (d).   In the event of a termination for cause, the Agreement does not provide any ability to contest the cause.   It provides only that the Authority "shall not act in an arbitrary and capricious manner," and that upon notice the Agreement "shall cease at once."   Id.

On August 2, 2016, PRHA terminated Short, by notifying him in writing that he breached paragraphs 2 and 3 of the Agreement, and that he willfully engaged in conduct "injurious to PRHA" in violation of ¶ 11.4 of his Employment Agreement.   Paragraphs 2 and 3 of the Agreement generally provide that Short would serve as Executive Director as provided by the By-Laws and use his best efforts to perform his duties consistent with the Board's regulations and requirements of other jurisdictions overseeing the work of the Authority.   Compl. ¶¶ 20, 23 (ECF No. 1-1).   The notice Short received did not specify how he had violated either paragraph 2 or 3 of the Agreement.   Likewise, the notice did not disclose what conduct of Short was "demonstrably injurious to the PRHA."   Compl., Ex. 3 (ECF No. 1-1).   Short has alleged that at all times he performed his prior work competently, and did not engage in any conduct which was willfully injurious to PRHA.   Compl.   ¶¶ 22, 25, 28.   In terminating him for cause the PRHA did not pay Severance Pay under the terms of the Agreement.   Short's annual salary was approximately $176,000.00.   As a result, under the language of the Agreement, the minimum

3

Severance Pay required if PRHA terminated him without cause was approximately $352,000.00.   Compl. ¶ 10, and Ex. 1 at ¶ 11.4. (ECF No. 1-1).

Approximately a week after Short's firing, Askew, in her capacity as attorney for PRHA, was interviewed by reporters concerning an ongoing investigation related to the Greater Portsmouth Development Corp.   Compl. ¶ 30 (ECF No. 1-1). Although Askew's statements are not quoted in detail, the Complaint alleges that she told reporters for The Virginian Pilot newspaper and WAVY TV that a "criminal investigation" was underway involving Short and former PRHA Deputy Director Kathy Warren related to "how Greater Portsmouth Development Corporation 'handled business deals'."   Compl. ¶¶ 30, 36 (ECF No. 1-1).   Short alleges these statements were untrue, and that Askew knew they were untrue "and/or made them with reckless disregard for their truth or falsity."   Compl. ¶¶ 33, 38 (ECF No. 1-1).

The article and news stories resulting from Askew's interview, which were attached to the Complaint as exhibits, quoted anonymous sources who stated that the HUD Inspector General was "looking into the City's housing Authority," and that the investigation related to the Board's decision to award a contract for legal services to a law firm which had not previously done work for PRHA.   Compl., Ex. 4 (ECF No. 1-1).

4

The newspaper article also reported Short's firing which had occurred earlier. The television report focused more on the Greater Portsmouth Development Corporation. It mentions a criminal investigation and attributes to Askew the statement that the investigation "does not involve the Board but rather Mr. Short and his former deputy," who had resigned earlier in the summer.

Based on the foregoing facts, Short filed suit against PRHA, Askew and her law firm asserting claims for breach of contract and defamation, as well as constitutional claims under 42 U.S.C. § 1983. Askew and her law firm have moved to dismiss the entire Complaint against them, arguing that the claimed statements made by Askew were not defamatory, and citing deficiencies in Short's allegations of New York Times malice in light of Short's status as a public official. Askew also argues that the § 1983 claims against her fail because she was not a state actor at the time the statements were made. For its part, PRHA does not seek dismissal of Short's contract claim, but argues that his allegations are insufficient to assert constitutional violations. The Authority argues that his contract provides the sole remedy and that the Agreement's provisions permitting termination without cause establish that he had no property interest in continued employment, and thus no claim for deprivation of that property interest under 42 U.S.C.

§ 1983. The Authority also asserts defenses to its liability for defamation, challenging both the substance of the defamatory statements and allegations that the Authority could be liable for Askew's statements under <u>respondeat</u> <u>superior</u>. After reviewing the Complaint, the parties' briefs and oral argument, this Report concludes that Askew's Motion to Dismiss should be granted, as Short has not pled sufficient facts to sustain any of his claims against her or her firm. The Authority's Motion to Dismiss should be granted in part and denied in part, as Short has plausibly alleged violations of due process related to his termination but has not adequately pled any basis for the Authority to be liable for Askew's alleged defamation.

## II.   <u>STANDARD OF REVIEW</u>

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. "Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. Twombly, 550 U.S. at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not state a claim. Iqbal, 556 U.S. at 678.

The United States Supreme Court has described the motion to dismiss analysis in two parts. First, the court must accept the allegations of fact as true. Id. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations. Iqbal, 556 U.S. at 678-79. After reviewing the allegations, the court must then consider whether they are sufficient to state a plausible claim for relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### III. <u>ANALYSIS</u>

A.   <u>Short has not plausibly alleged a defamation claim against Askew or the Askew firm, and Counts 3 and 4 should be dismissed</u>.

The parties disagree about the elements of a defamation claim necessary to survive a motion to dismiss.  Askew argues that the specific defamatory statements must be pled <u>in</u> <u>haec</u> <u>verba</u>, and that Short's failure to do so is fatal to both defamation counts.  She also argues that Short is a public official, and thus, her allegedly defamatory statements must have been made with <u>New York Times</u> malice.  Short disputes both these points, arguing that the ordinary federal pleading standard applies to defamation claims, and that he is no longer a public official because he was terminated as the Housing Authority Executive Director prior to Askew publishing the defamatory statements.

As to the appropriate pleading standard, the Fourth Circuit has clearly held that defamation claims in federal court are not subject to any heightened pleading requirements.  <u>Hatfill v. New York Times Co.</u>, 416 F.3d 320, 329 (4th Cir. 2005).  Although Rule 9(b) prescribes that certain matters must be pled "with particularity," defamation is not among them.  <u>Id.</u> (citing Fed. Civ. P. 9(b)).  Thus, the ordinary rules of notice pleading apply and Short's allegations must be examined to determine

whether they plausibly state a claim for relief.  Id.; see also Iqbal, 556 at 678.

Although no heightened pleading requirement applies, the statements attributed to the charged defendant must still be defamatory.  Under Virginia law, a defamation plaintiff must allege publication of false information that tends to defame plaintiff's reputation.  Chapin v. Knight Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993) (citing The Gazette, Inc. v. Harris, 229 Va. 1 (1985)).  Actionable statements include those that impute the commission of a criminal offense involving moral turpitude, infection with a contagious disease, unfitness to perform an office of employment, or which "prejudice such person in his or her profession or trade."  Carwile v. Richmond Newspapers, Inc., 196 Va. 1, 6 (1954).  The question of whether a statement is capable of defamatory meaning is a question of law to be decided by the court.  Hatfill, 416 F.3d at 330 (citing Yeagle v. Collegiate Times, 255 Va. 293, 296 (1998)).  Speech which does not contain a provably false connotation, or which cannot be reasonably understood as stating actual facts about a person, cannot be defamatory.  Yeagle, 255 Va. at 295.

In addition to the foregoing elements, Short, as a public official, cannot recover if the defamation relates to his official conduct, unless he proves that it was made with "actual malice."  Malice in the defamation context requires proof of

9

knowledge that the statement was false or reckless disregard for whether it was false or not. New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964). Actual malice in the defamation context does not require a motive for ill will such as malice ordinarily connotes. Foretich v. Capital Cities/ABC, Inc., 37 F.3d 1541, 1551 n.8 (4th Cir. 1994). But to prove actual malice, the plaintiff must establish by clear and convincing evidence that the statement was published with a "high degree of awareness of . . . probable falsity" or that the defendant "in fact entertained its serious doubts as to the truth of his publication." Id. (citing Garrison v. Louisiana, 379 U.S. 64, 74 (1964) (other citations omitted)).

In this case, Short does not dispute that as Executive Director of Portsmouth Public Housing Authority that he was a public official within the meaning of New York Times. He argues, however, that his public official status ended when he was terminated. As a result, he contends Askew's statements made the following week need only be proven false and defamatory as he was a private individual at that time. But, Short's public official status did not immediately expire upon his termination for purposes of the First Amendment implications animating the New York Times standard. See Time, Inc. v. Johnston, 448 F.2d 378, 381 (4th Cir. 1971) ("mere passage of time will not necessarily insulate from the application of New

<u>York Times Co v. Sullivan</u>, publications relating to the past public conduct of a then 'public figure' . . . so long as news worthiness and public interest attach to events in such public career"). Thus, the fact that Short had recently been terminated does not diminish the First Amendment protection afforded to speech about matters related to his pubic role.

Short has also argued that the <u>New York Times</u> standard did not apply to non-media defendants, but the United States Supreme Court has never so held. And in <u>Foretich</u>, the Fourth Circuit suggested that there was no distinction between media and non-media defendants in the requirement to demonstrate actual malice. <u>Foretich</u>, 37 F.3d 1541, 1563 (4th Cir. 1994); <u>see also</u>, <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1, 20 n.6 (1990). Finally, the Fourth Circuit has already applied the <u>New York Times</u> malice standard in defamation cases against non-media defendants. <u>Mayfield v. National Association for Stock Car Auto Racing, Inc.</u>, 674 F.3d 369, 377-78 (4th Cir. 2012).

Against these standards the vague assertions attributed to Askew in Short's defamation counts do not plausibly allege the tort with the requisite intent. To begin with, the statements do not directly attribute to Short the commission of any crime. Accepting the words in their ordinary meaning, Askew was observing that the investigation, which was being conducted by HUD, involved the Greater Portsmouth Development Corp. And in

the context of both news reports the distinction she drew between the Board and Short was relevant to show that the criminal investigation she described did not relate to the Board decision to award the legal services contract to another firm, which was the primary focus of both stories.   In this vein, Askew's reference to the "involvement" of Short conveys that the subject of the investigation was within the executive's purview, and not something which required Board action.

Short, however, argues that it is a reasonable inference from the allegations that a reader would conclude Short himself was suspected of criminal wrongdoing.   It would be generous to conclude that this inference is plausible, as the Complaint does not allege that Short had any involvement with the Greater Portsmouth Development Corp., which was the primary focus of the HUD investigation according to Askew's remarks.   Nevertheless, given that Short is also required to allege facts sufficient to support his claim of actual malice, the court must be able to conclude both that Askew knew that her statements would be construed as accusing Short of involvement in criminal wrongdoing, and also knew that such an inferred association would be false.  As there is no affirmative allegation disputing or confirming Short's involvement with the target entity, and no basis to infer that Askew could have known that in any event, he has not stated a claim for defamation against her or her law

12

firm based on the statements attributed to her.  Accordingly, Counts 3 and 4 should be dismissed.

B.  <u>Even if Short can plausibly allege defamation in an Amended Complaint, his § 1983 claims against the Askew Defendants fail because neither is a state actor.</u>

In addition to his defamation claims, Short has alleged two claims for relief under 42 U.S.C. § 1983 asserting that the Askew statements deprived him of a protected liberty interest in his reputation.  To state a claim under § 1983, Short must identify a right secured by the Constitution or the laws of the United States, and must plausibly allege that the deprivation of that right was committed by a person acting under color of state law.  <u>Crosby v. City of Gastonia</u>, 635 F.3d 634, 639 (4th Cir. 2011) (citation omitted).  In order to be liable, the "person" must either "be a state actor or have a sufficiently close relationship with state actors that a court would conclude the non-state actor is engaged in the state's action." <u>DeBauche v. Trani</u>, 191 F.3d 499, 506 (4th Cir. 1999).  Private activity is generally not state action unless the state so dominated the conduct as to convert it into state action.  "Mere approval of or acquiescence in the initiatives of a private party" is insufficient. <u>Blum v. Yaretski</u>, 457 U.S. 991, 1004 (1982).

In Counts 5 and 6, Short has alleged denial of due process under § 1983 and asserted deprivation of his liberty interest in reputation.  In order to state a liberty interest sufficient to

raise a § 1983 claim, Short must allege that the statements he relies upon "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007). If such an interest is alleged, the plaintiff may be entitled to an opportunity for a name clearing hearing. Id. But, an injury to reputation alone does not give rise to a protected liberty interest "absent an accompanying loss of government employment." Paul v. Davis, 424 U.S. 693, 706 (1976).

In this case, even viewing the facts and all reasonable inferences in favor of Short, he has not alleged deprivation of a liberty interest sufficient to invoke due process protections. The statements by Askew which he relies upon were not made in conjunction with his termination or demotion, and thus unrelated to this government employment. In addition, Askew was not Short's employer, rather she was a private attorney representing the Authority. This is insufficient to impose liability for her actions under § 1983.

At the time she made these statements to reporters, Askew was not a "state actor" for purposes of a constitutional claim under § 1983. In determining whether a person acts under color of state law, "the nature of the act performed is controlling." Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 872 (4th Cir.

1989).  For a private citizen to act under color of state law, she must be "clothed with the authority of state law," at the time of the action complained of.  Dyer v. Md. State Bd. of Educ., 685 F. App'x 261, 263 (4th Cir. 2017) (quoting Polk Cty. v. Dodson, 454 U.S. 312, 317-18 (1981)).  In this case, even assuming Askew was acting as an attorney for the Board during her interviews with reporters, she was not "exercising power [she] possessed by virtue of state law," nor were her statements made possible solely because she was exercising state power. Id.  In Dyer, the Fourth Circuit explicitly held that a law firm does not become a state actor merely by rendering legal services to a public entity, because the rendering of those services is not a power which the lawyer "possessed by virtue of state law." 685 F. App'x at 263.

In addition, Askew's statements were made a week after Short's termination.  They do not reference his termination, or the grounds the Board relied on in terminating him.  As a result, the statements do not place a stigma on Short's reputation of the type which might require a name clearing hearing.  See Sciolino, 480 F.3d at 646.  Even defamatory statements by government officials, apart from any connection to employment, are not sufficient to invoke a liberty interest protected by the Fourteenth Amendment.  The stigmatizing statements must be made "in the course of the termination of

employment."  See Paul, 424 U.S. at 710.  Because Short has not plausibly alleged any violation of a protected liberty interest by a state actor, he has not stated a claim to relief against the Askew Defendants in Counts 5 or 6.

C.   Short cannot plausibly allege that PRHA could be liable for Askew's allegedly defamatory remarks under § 1983 or Virginia's common law of defamation.

Short has imprecisely pled his liberty interest and defamation claims against all the Defendants.  As set forth above, he has not plausibly stated claims against Askew or her law firm.  Even if he re-pleads the claims he cannot plausibly allege claims sufficient to proceed against PRHA under these Counts.  It is well established that PRHA can have no liability under § 1983 for the acts of an agent under the doctrine of respondeat superior.  Thus, the Authority cannot be liable for Askew's statements - defamatory or otherwise - under § 1983 merely because it employed her.  Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).  Likewise, to the extent Short attempts to hold the Authority for Askew's claimed defamation under state law, the Authority enjoys sovereign immunity from state tort claims as a political subdivision of the Commonwealth with all the attributes of a municipal corporation.  Va. Elec. & Power Co. v. Hampton Redevelopment & Hous. Auth., 217 Va. 30, 33 (1976).  In addition, while municipal entities may be liable in their own right as a "person" under § 1983, such liability only

attaches to the Authority when the allegedly unconstitutional action executes "a decision officially adopted and promulgated by that body's officers." Monell v. Dept of Soc. Servs. of N.Y., 436 U.S. 658, 690 (1978). Here, Short has not alleged that the Board had anything to do with Askew's statements to the media, and thus it is not liable for them under 42. U.S.C. § 1983 or Virginia's common law of defamation. As a result, to the extent Short attempts to plead Counts 3 through 6 against PRHA, he has failed to plausibly allege the claims and all four counts should be dismissed against the Authority.

D.  Short has plausibly alleged that PRHA deprived him of a property interest conferred by his employment contract.

In addition to his liberty interest claims, Short has alleged that PRHA deprived him of his property interest in continued employment without due process of law. As with his liberty interest claim, the court must first determine whether the plaintiff has identified a constitutionally protected property interest at stake. See Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988). With respect to his property interest claim, he argues that his three-year contract provided a constitutionally-protected property interest, and that PRHA's firing did not comport with the requirements of due process. "To have a property interest subject to procedural due process protection, an individual must be entitled to a benefit

created and defined by a source independent of the constitution such as state law." Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1141 (4th Cir. 1990) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  In the context of employment, the independent source for the property interest may be a contract which provides for continued employment, and which can be terminated only for good cause.  Royster v. Bd. of Trustees of Anderson Cty. Sch. Dist., 774 F.2d 618, 620 (4th Cir. 1985). Proof of a property interest generally entitles an employee to the "fundamental requisite of due process," a hearing "where he could be informed of the grounds for his non-retention and challenge their sufficiency."  Detweiler v. Dept. of Rehabilitative Servs., 705 F.2d 557, 561 (quoting Perry v. Sindermann, 408 U.S. 593, 603 (1972)).

In this case, PRHA argues that Short's employment contract did not provide any property interest because it contained a provision permitting his termination without cause.  The Authority contends that because it had the ability to terminate Short without cause, his employment was essentially "at will," and PRHA's decision to terminate him for cause required no special protection.  As a result, the Authority argues, he cannot state a claim for deprivation of the property interest without due process.

This argument overlooks a significant obstacle to Short's termination without cause - namely PRHA's contractual obligation to pay him more than $350,000.00 in severance. Had the Authority exercised its right to terminate Short without cause <u>and</u> pay the severance compensation due under the contract, he would clearly not be deprived of any property interest sufficient to invoke due process protection. <u>See Royster</u>, 774 F.2d at 621 (plaintiff's constitutionally protected property interest satisfied by payment of the full compensation due under employment contract); <u>Huang</u>, 902 F.2d at 1142 (same). But in this case, the Authority has not paid Short's severance, thus depriving him of a significant property interest.

The Authority asserts that merely denying Short's severance creates no more than a contract right of action. But this reads the concept of property interest too narrowly. It is true that the hallmark of a protected property interest is "an individual entitlement grounded in state law which cannot be removed except 'for cause.'" <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 430 (1982). But once that threshold is crossed, "the types of interest protected as 'property' are varied . . . relating to the whole domain of social and economic fact." <u>Id.</u> (citations omitted). At this stage of the proceedings and viewed in the light most favorable to Short, the generous severance payment he negotiated suggests that the Authority's right to terminate him

"without cause" upon paying him at least two years' salary means that he was not employed "at will."   Instead, his three-year contract provided he would be terminated only for cause or receive a generous severance payment.   This is sufficient to plausibly allege a protected property interest.   See Wooten v. Clifton Forge Sch. Bd., 655 F.2d 552-54 (4th Cir. 1981) (citing Perry, 408 U.S. at 601) (contract which either expressly or implicitly provides for continued employment that can only be terminated for good cause sufficient to create a protected property interest) (emphasis added).

The Authority next argues that it is not required to provide Short with any more protection than was due under the Agreement, and that Short's consent to its terms constitutes a waiver of any due process protection not provided by the contract.   The Authority asserts that its actions do not give rise to a due process claim because Short has an adequate post-deprivation remedy by enforcing his rights under the contract if he has been wrongly discharged.

When a plaintiff is deprived of a property interest through the "random and unauthorized acts" of state officials, he has no claim to procedural due process so long as the state law affords an adequate post-deprivation remedy.   Parratt v. Taylor, 451 U.S. 527, 544 (1981), Palmer v. Hudson, 468 U.S. 517, 531 (1984).   In this case, however, the action Short challenges is

20

neither random nor unauthorized, but the formal adoption of a Board resolution during a public meeting. This is the <u>sine qua non</u> of state action by the Board of the type which is remediable under § 1983. <u>Monell</u>, 436 U.S. at 690-91 (holding municipalities liable under § 1983 when challenged action "implements or executes a policy statement, ordnance, regulation, or decision officially adopted and promulgated by that body's officers").

Neither has Short waived due process protection by entering into a written contract. The language of the contract itself contains no express waiver and any such waiver, even in a civil context, would have to be voluntary, knowing, and intelligently made – the "intentional relinquishment of a known right." <u>D.H. Overmyer Co., Inc. v. Frick Co.</u>, 405 U.S. 174, 185-86 (1972). In fact, the Authority's waiver argument is really a subspecies of its claim that the contract itself provides an adequate post-deprivation remedy. As noted, however, an adequate post-deprivation remedy may protect agencies against liability for unauthorized and random acts. But, "the Supreme Court has held that post deprivation remedies do not satisfy due process when the deprivation of property is caused by conduct pursuant to 'established state procedure.'" <u>Yates v. Jamison</u>, 782 F.2d 1182, 1184 (4th Cir. 1986) (citing <u>Logan</u>, 455 U.S. at 435-36). Moreover, drawing all reasonable inferences in favor of Short,

it is not clear that Short's contract remedy would be adequate considering the significant property interest he has alleged and the Authority's actions in terminating him.  The contract purports to require that PRHA provide notice of the reasons for termination.  Compl., Ex. 1, ¶ 11.4 (ECF No. 1-1).  In this case, PRHA provided Short a letter supposedly identifying the cause which led to his termination.  But the letter merely recites general claims of breach, without identifying any action or conduct by Short which the Authority claims gave it cause to terminate him.  Id., Ex. 3 (ECF No. 1-1).  In addition, the contract provides no pre-deprivation notice, no grievance procedure, and recites that upon notice of termination for cause the contract shall "cease at once" the moment notice is conveyed.  Id., Ex. 1, ¶ 11.4 (ECF No. 1-1).  Finally, the contract provisions state that the Authority's actions are subject to scrutiny only if it is deemed to have acted "arbitrarily and capriciously."  Id.

"[T]he scope of [any] property interest is a fact intensive inquiry that turns on the terms of the contract (or law) creating the property interest. This is so because a property interest exists in a benefit only where there is a contractual right not to be deprived of that benefit without good cause or just cause." Garner v. Steger, 69 F. Supp. 3d 581, 590 (W.D. Va. 2014) (citing Royster, 774 F.2d at 620-21).  At this stage

of the proceedings, viewing the facts alleged in the light most favorable to Short, he has plausibly pled a property interest, of which he cannot be deprived except for cause.   Whether that property interest is his $350,000.00 severance payment or his right to continued employment for the remaining term of his three-year contract, Short could not be deprived of that interest without a determination of cause subject to some measure of due process protection.   And again, accepting the facts pled in the light most favorable to Short, the court is bound to presume that he fully and capably performed the duties of his employment, and had not given the Authority cause to terminate him without payment of severance as required by the Agreement.   Accordingly, Short has plausibly alleged a claim for violation of due process against the Authority and the Authority's motion to dismiss Count 2 should be DENIED.

## IV.   RECOMMENDATION

For the foregoing reasons, this Report recommends that Askew's Motion to Dismiss (ECF No. 12) should be GRANTED, and all counts against the Askew Defendants DISMISSED.   Should Short seek leave to file an amended complaint to amplify his allegations of defamation, Counts 3 and 4 should be dismissed with leave to amend.   However, it does not appear that Short can plausibly allege a liberty interest violation because Askew was

244342223344444444

not a state actor, and thus Counts 5 and 6 should be dismissed without leave.

The Authority's Motion to Dismiss (ECF No. 14) should be GRANTED IN PART AND DENIED IN PART, dismissing Counts 3, 4, 5 and 6 against the Authority, and allowing the case to proceed on Counts 1 and 2. Further, it does not appear the Authority can be liable under Counts 3, 4, 5 or 6 and those counts should be dismissed without leave.

## V.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth

24

above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                             /s/
                        Douglas E. Miller
                        United States Magistrate Judge
                        DOUGLAS E. MILLER
                        UNITED STATES MAGISTRATE JUDGE

March 8, 2018